COPE, J.
Eileen M. Brake appeals a final judgment which imposed a surcharge of $215,-990 on her. We reverse.
I.
Eileen Brake served as the personal representative for the Estate of her late mother, Eileen E. Murphy, beginning June 14, 1988. The principal asset of the Estate was an office building in Coral Gables, Florida.[1] It was Mrs. Brake’s responsibili *1280 ty, as personal representative, to deal with offers to purchase the office building. On December 14, 1989, the probate court appointed an administrator ad litem to take charge of all matters relating to the office building, and Mrs. Brake had no further responsibility for sale or management of the building after that time.
Two of the beneficiaries, Eve Murphy and Richard Murphy, (“petitioners”), brought this surcharge action. They contended that Mrs. Brake acted improperly by failing to pursue in good faith a sale of the office building. They focused in particular on a tentative offer made by Yaron and Deborah Degani to purchase the building for $700,000 cash, and alleged that the Deganis finally withdrew from the transaction because Mrs. Brake (and her husband, Robert Brake, then the attorney for the Estate) failed to negotiate reasonably and in good faith.
In December 1991, Mrs. Brake and her brother, Dennis L. Murphy, Jr., purchased the office building for $595,000.[2] They gave back a mortgage for a substantial part of the purchase price. The petition for surcharge contended that the Estate had been damaged by reason of the lower purchase price and two-year delay in the sale of the building.
After bench trial, the probate court found for the petitioners and imposed a surcharge of $215,990 on Mrs. Brake. Mrs. Brake has appealed.
II.
We conclude that the trial court erred by excluding Mrs. Brake as a witness during the defense case, and striking the testimony she had already given in the defense case.
At the bench trial, Robert Brake, Mrs. Brake’s husband, represented her. The trial took place in chambers where the Brakes were seated next to each other.
During the petitioners’ case-in-chief, petitioners called Mrs. Brake as an adverse witness. Toward the end of the direct examination, petitioners showed Mrs. Brake the closing statement from her 1991 purchase of the office building and asked whether she had signed it. She replied that she had not, but that Mr. Brake had signed on her behalf and on behalf of the other purchaser, Richard L. Murphy, Jr. This all appears self-evident from the face of the document, which is in evidence.
During Mr. Brake’s cross-examination of Mrs. Brake, the trial court called a recess to deal with an emergency matter. The court gave no instruction prohibiting, or limiting, any conversation between counsel and the witness during the recess. As the trial judge was leaving the bench, she heard Mrs. Brake ask Mr. Brake, “I didn’t sign it did I?” Mr. Brake answered, “No.”
The court asked Mr. Brake to show cause why he should not be held in contempt for speaking to the witness about her testimony while she was on cross-examination. Mrs. Brake stated that she did not understand that there was anything which would prohibit her speaking to Mr. Brake during a recess. She said that although she is a lawyer, she is on the Florida Bar inactive list and does not practice law.
Mr. Brake said that he should not have commented about the testimony Mrs. Brake had given, but he had done so without thinking, and that the witness had already given her testimony on the point, which was of record. The court indicated *1281 that it would conduct a contempt hearing as to Mr. Brake the following day.
The trial went forward and the examination of Mrs. Brake on the plaintiffs’ casein-chief was completed. There was no further questioning about whether Mrs. Brake had personally signed the closing statement, and that fact was not material to any issue in the surcharge trial.
At the conclusion of the day, the court directed Mr. Brake not to prompt any answers of any witness before the court, or give any answers to any witness or tell them what they are supposed to testify to.
Mrs. Brake requested clarification whether she could now speak to Mr. Brake since her testimony in the petitioners’ case had concluded. The parties and the court were aware that Mrs. Brake would be called again as a witness when the defense case began. The court said, “You can speak to each other. [But] nobody is to tell you what you are to answer.” The court went on to say, “You don’t ask anybody for advice as to the truth of the matter of anything while you are on the stand, and least of all on cross.... ”
The next morning the court announced that it would defer the contempt proceeding. Petitioners rested their case. The defense case began with Mrs. Brake as the first witness. During his direct examination, Mr. Brake showed Mrs. Brake several proposals she had obtained from real estate agents while she was personal representative for possible listing of the office building for sale.[3] The court took a recess.
When the court reconvened, petitioners told the judge that during the recess, Mrs. Brake had spoken to Mr. Brake. The first exchange between the two was inaudible, but in the second exchange, Mrs. Brake pointed to one of the documents and said, “Aren’t there four lots?”, and Mr. Brake said, “Yes.”
The court then asked Mrs. Brake why she should not be found in contempt of court. Mrs. Brake responded that she had been told yesterday that she could speak to Mr. Brake. She also pointed out that during recesses on the previous day, petitioners’ counsel had met with their client[4] and that while she was sorry to make the court angry she still did not understand what rules were being applied.
Mrs. Brake explained that her first comment to Mr. Brake was that with her mispronunciation of words, the computer (apparently a reference to the court reporting equipment) was going to have a difficult time and Mr. Brake responded that they had hardware for that.
Mr. Brake confirmed the substance of the first exchange and pointed out that the second question and answer dealt with something that was not an issue in the case. The office building in question occupies four lots. Mrs. Brake during the recess noticed that one of the realtors’ proposals stated that the building was situated on three lots. It is undisputed that the correct figure is four lots, and that fact was never an issue in the case.
Petitioners’ counsel and counsel for the successor personal representative urged the court to exclude Mrs. Brake as a witness and strike her testimony from the defense case. Concluding that Mrs. Brake had violated the court’s instructions, the court granted that request. The court also ordered Mrs. Brake not to say anything to her husband thereafter.
■ We must respectfully disagree with the trial court’s conclusion that the Brakes had violated the court’s instructions. At the end of the previous day, the court specifically gave Mrs. Brake permission to talk with Mr. Brake. The court did not issue *1282 any contrary instruction when it left the bench. Thus, the fact that Mrs. Brake spoke to Mr. Brake was not a violation of anything.
The trial court’s other admonition was that Mr. Brake could not tell the witness how to testify or otherwise suggest answers, or comment about testimony which had been given. There was no violation of that instruction either. The first exchange was about the court reporting equipment, and the court’s order certainly did not apply to that conversation.
As to Mrs. Brake’s second comment, the record is reasonably clear that Mrs. Brake did point to a realtor proposal which she had been shown on the stand and asked Mr. Brake whether there were four lots underneath the office building, instead of (as the realtor proposal incorrectly stated) three. There had been no testimony about the number of lots under the office building, and no such testimony could reasonably be expected: the number of lots is undisputed and is not even remotely an issue in the case. The thrust of the admonition on the previous day was that Mr. Brake should not coach the witness or suggest answers, nor should Mrs. Brake ask for confirmation or advice about the substance of her testimony. There was no violation of that admonition here.[5]
The trial court’s remarks indicate, however, that the court believed there to be an unwritten rule which prohibits a party from speaking with his or her counsel during a recess in a civil case. Thus, the trial court appears to have proceeded on the premise that there is a generally understood rule on this point, and that the Brakes had violated it.
The question in this case involves the right of party to consult with counsel during a recess, as opposed to the rules which may apply in the case of a nonparty witness. With deference to the trial court we think that in civil cases, the practice actually varies from courtroom to courtroom. If the court or the opposing litigant desires to limit or prohibit discussion between a party and his or her counsel during a recess in testimony, then those ground rules should be established at the start of trial or at the time the recess is taken.[6] There was no such instruction here; in fact the court’s most recent instruction allowed Mr. and Mrs. Brake to speak to each other.
The bench trial must be reopened to allow Mrs. Brake to testify and petitioners to respond thereto. The order striking the testimony Mrs. Brake had already given is reversed.
III.
Mrs. Brake states that the evidence is legally insufficient to establish that she acted improperly or in bad faith in her capacity as personal representative. See § 733.609, Florida Statutes (1987). For present purposes we treat this contention as an argument that her motion for involuntary dismissal should have been granted at the conclusion of the petitioners’ case. The motion was properly denied. The petitioners’ evidence, if believed by the court, *1283 is sufficient to establish an improper exercise of the personal representative’s power within the meaning of section 733.609. Upon conclusion of the trial on remand, it will be for the court to resolve the conflicts in the evidence.
Mrs. Brake also argues that the trial court employed the wrong measure of damages. We find no error on this point.
IV.
Earlier in the proceedings, the trial court entered a partial summary judgment against Mrs. Brake on a portion of the surcharge case. The partial summary judgment provided that Mrs. Brake would be held liable for certain attorney’s fees and costs of the administrator ad litem, the successor personal representative, and beneficiaries Eve Murphy and Richard Murphy. This partial summary judgment was reiterated in the final judgment, and there was a reservation of jurisdiction to set the attorney’s fees and costs at a later date.
Mrs. Brake contends that the partial summary judgment is in error insofar as it predicates her liability on her entry into a fourth mortgage on the office building, which was done at a time when Mrs. Brake was personal representative. Earlier in the proceedings the fourth mortgage was set aside by the trial court because the mortgage was placed on the property without court approval. See § 733.610, Fla. Stat. The partial summary judgment indicates in substance that Mrs. Brake will be surcharged. Since the mortgage itself was set aside, the financial injury would be limited to the attorney’s fees, and possibly fees for the administrator ad litem or successor personal representative, associated with setting aside the fourth mortgage. The trial court has reserved jurisdiction to award such fees, but has not yet set the amount. We find no error in the partial summary judgment.
Mrs. Brake argues alternatively that the Estate, in fact, had no compensable damages. At the time of this appeal, the court had not yet set the fee amount. When a hearing is held, Mrs. Brake is free to argue that there are no compensable damages.[7]
Mrs. Brake argues that the claim relating to the fourth mortgage was not pled in the petition to surcharge. On the contrary, the fourth mortgage was mentioned at pages five and fifteen of the petition to surcharge.
Mrs. Brake contends that the fourth mortgage was not included as a part of the petitioners’ motion for partial summary judgment. That contention appears to be correct, but Mrs. Brake has not demonstrated that she objected on that ground in the summary judgment proceedings.
Mrs. Brake objects to the trial court’s allowing the successor personal representative to participate as a party in this surcharge proceedings. We see no error.
Mrs. Brake asks that we disqualify the trial judge. While we have agreed with Mrs. Brake that there was a trial error in this case, an erroneous ruling is not a basis for disqualification. See Wilson v. Renfroe, 91 So.2d 857, 860 (Fla.1956).
IV.
For the stated reasons, the final judgment is reversed and the cause remanded with directions to reinstate Mrs. Brake’s stricken testimony, reopen the record, allow Mrs. Brake to testify, allow petitioners to respond, and for further proceedings consistent herewith.

. Although immaterial to the issues involved here, at the time of Eileen Murphy’s death, the decedent owned 96% of the stock in Murphy Investments, Inc., which owned the office building. The four beneficiaries of the will each held 1% of the stock of the corporation. *1280 The four beneficiaries were Eileen Murphy’s three surviving children (Eileen M. Brake, Dennis Murphy, Jr., and Richard Murphy) plus Eve Murphy, who was the widow of Mrs. Murphy’s son Joseph.
Late in 1988, the corporation deeded the property to the Estate and beneficiaries in proportion to their stock ownership: 96% to the Estate, and 1% each to the four beneficiaries.

. Mrs. Brake and Dennis L. Murphy, Jr., were allowed to match the purchase price which had been negotiated for the office building by the administrator ad litem.

. These were marked for identification but were not introduced into evidence.

. The court did not follow up this observation that petitioners may have engaged in the same conduct they were criticizing Mrs. Brake for.

. It is true that at the conclusion of the court’s admonition on the previous day, the court said, “You don't ask anybody for advice as to the truth of the matter of anything while you are on the stand....” When read in context, it is clear the "anything” the court was referring to was the correctness of matters that were, or would be, the subject of testimony.

. The parties have not briefed, and we decline to address, the scope of the court's discretion in this area as relates to parties to civil lawsuits. The Florida Supreme Court has indicated that when there is a brief trial recess during cross-examination of a civil party, the court may instruct the witness not to speak to his or her counsel during the recess. See Bova v. State, 410 So.2d 1343, 1345 (Fla.1982). The court did not in that opinion address other trial situations. For a discussion of other aspects of the issue, see Judge Fay’s opinion in Potashnick v. Port City Construction Co., 609 F.2d 1101, 1117-20 (5th Cir.1980), and Reynolds v. Alabama Dept. of Transportation, 4 F.Supp.2d 1055 (M.D.Ala.1998).

. This court previously addressed the fourth mortgage in Brake v. Murphy, 636 So.2d 72, 74 (Fla. 3d DCA 1994), which was later vacated to the extent that it had affirmed an earlier surcharge judgment. See Brake v. Murphy, 693 So.2d 663, 664 (Fla. 3d DCA 1997).